UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. S1-4:20 CR 00178 HEA |
| ) | |
| JASON STANLEY JONES (2), ) | |
| ) | |
| Defendant. ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant JASON STANLEY JONES, represented by defense counsel JOHN P. ROGERS, and the United States of America (hereinafter "government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Conspiracy to Distribute a Controlled Substance, a lesser offense necessarily included in Count II of the charge, the government agrees to move for dismissal as to Counts VII, XI, and XII at the time of sentencing. The government also agrees that no further

1

federal prosecution will be brought in this District relative to the defendant's participation in a conspiracy to distribute a controlled substance between September 2019 and the date of entry of this plea, or his possession or distribution of fentanyl during that period, or his possession of any firearm on May 28, 2020.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that at the time of sentencing, they shall make a joint, non-binding recommendation for a total aggregate sentence of 84 months.

The defendant also agrees, pursuant to the guilty plea to Count II, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including any and all items listed in the Forfeiture Allegation in the Superseding Indictment and in particular, $3,800.00 in United States currency seized from defendant on May 28, 2020.

### 3. ELEMENTS:

As to Count II, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Beginning on an unknown date but including September 2019 and continuing until May 2020, within the Eastern District of Missouri, two or more persons came to an agreement or reached an understanding to distribute a controlled substance, and;

2. Defendant knowingly and intentionally joined in the agreement or understanding, and

2

3. That at the time he joined in the agreement or understanding, defendant knew its illegal purpose.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning in September 2019, investigators with the Drug Enforcement Administration and St. Louis County Police Department began investigating drug trafficking activities allegedly being undertaken by co-defendant Jamore Clark ("Clark") and others in the St. Louis metropolitan area. Investigators discovered that defendant Jason Jones ("Jones") was distributing fentanyl and conducted a controlled purchase of $1,800 worth of fentanyl from Jones on December 28, 2019. They conducted a second controlled purchase of $1,800 worth of fentanyl from Jones on January 9, 2020.

The investigation continued until February 2020, when agents received judicial authorization to monitor a telephone utilized by Jones. During that judicially authorized wiretap, investigators intercepted conversations between co-defendant Jones and customers, as well as co-conspirators, discussing money and narcotics. The conversations revealed that after receiving narcotics orders from customers, Jones typically contacted co-defendant Arie Graham ("Graham"), and directed Graham to obtain the requested amount of narcotics from co-defendant Martez Murphy ("Murphy"), who was responsible for preparing Jones' fentanyl for distribution. After obtaining narcotics from Murphy, Jones acted as a middle man, coordinating a meeting between Graham and his (Jones') customers, including Alaena Patrick.

3

On February 10, 2020, agents intercepted a series of conversations between Jones and Graham. Following those conversations, Graham traveled to Murphy's residence in Black Jack, Missouri at Jones' direction. There, Graham obtained fentanyl from Murphy, which Graham then transported to an area near Thekla Avenue, where Graham provided Kevin Huddlen with approximately 200 fentanyl pills (packaged in four separate bags of 50 pills each).

On February 18, 2020, agents intercepted conversations between Jones and co-defendant Alaena Patrick ("Patrick"). These conversations suggested that Patrick was awaiting a quantity of fentanyl. Agents established surveillance and observed Graham, as directed by Jones, travel to the area of Thekla Avenue, and obtain approximately 50 fentanyl pills, which Graham then provided to Patrick at the Jones' direction. Patrick was subsequently arrested by the Hazelwood Police Department.

On February 21, 2020, agents again intercepted a series of conversations between Jones and Graham, after which Graham traveled to Murphy's residence in Black Jack, Missouri at Jones' direction.

On April 14, 2020, agents received judicial authorization to monitor a second telephone utilized by Jones. There, Graham obtained 250 fentanyl pills (packaged in five separate bags of 50 pills each). On April 23, 2020, agents intercepted conversations between Jones and Patrick suggesting that the two planned to meet. Surveillance agents observed Jones meet with Patrick in Black Jack, MO. Based upon information gleaned from the judicially authorized wiretap, the purpose of the meeting was for Jones to provide Patrick with approximately 100 fentanyl pills (split into 2 separate 50 pill bags).

On April 28, 2020, agents intercepted conversations between Jones and Patrick suggesting that Patrick was attempting to obtain controlled substances. Surveillance agents observed Jones travel to

4

the area of Pamplin Avenue where, based upon conversations intercepted over the judicially authorized wiretap, Jones obtained approximately 1 gram of heroin. Upon departing Pamplin, agents observed Jones travel to Graham's residence, where Jones obtained approximately 150 fentanyl pills from Graham. Conversations intercepted later that day over the judicially authorized wiretap revealed that Jones met with Patrick later that day and transferred 150 fentanyl pills to Patrick (split into 3 separate 50 pill bags), along with 1 gram of heroin.

On May 3, 2020, surveillance agents observed co-defendant Justin Hughes ("Hughes") conduct a hand-to-hand transaction with an unknown white female Bridgeton, Missouri. The transaction took place inside of a vehicle being driven by Patrick. Following this transaction, Patrick and Hughes were observed traveling to Agata Avenue in St. Louis where they were observed meeting with an unidentified black male in a vehicle. After intercepting conversations between Jones and Patrick, agents observed Jones travel to the area of Pamplin Avenue to obtain 1 gram of heroin, and then travel to Whispering Lake Drive to obtain 150 fentanyl pills (split into 3 separate 50 pill bags) from Murphy. Upon obtaining the aforementioned fentanyl from Murphy, agents observed Jones travel to Graham's residence, where Jones provided Graham with the aforementioned heroin and fentanyl. Agents then observed Graham travel up the street, and meet with Patrick (who had dropped off Hughes prior to this meeting). During the meeting, Graham provided Patrick with 150 fentanyl pills and 1 gram of heroin. Agents maintained surveillance of Patrick following the meeting. A St. Louis County Police Department officer then conducted a traffic stop of Patrick, resulting in the seizure of 170 fentanyl pills (divided into 3 bags containing 50 pills and 1 bag containing 20 pills), I gram of heroin, 30 MDMA pills, 5 Benzodiazepine pills, and I gram of ice-methamphetamine. Each 50-pill bag of fentanyl pills consisted of approximately 5 grams of fentanyl.

5

On May 6, 2020, agents intercepted conversations between Patrick and Jones wherein Patrick advised Jones that she had been arrested on May 3, 2020. She also advised Jones that he and Graham were the targets of an active law enforcement investigation.

On May 28, 2020, investigators executed five Federal search warrants at various locations associated with the conspiracy, including Jones' residence. At Jones' mother's residence, a location where Jones was frequently observed, investigators retrieved one firearm, miscellaneous ammunition, marijuana, and a quantity of fentanyl.

The total amount of fentanyl attributable to Jones is difficult to calculate with precision. However, based upon the known evidence, including controlled substance seizures, intercepted conversations, physical surveillance, statements of co-conspirators defendant's own statements, the parties are in agreement that defendant is accountable, based upon his own conduct and the conduct of co-conspirators reasonably foreseeable to him, for more than 400 grams but less than 1.2 kilograms of fentanyl.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal

6

History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 30, as found in Section 2D1.1(c)(5). The parties agree that the quantity of fentanyl for which the defendant is accountable, including relevant conduct, is at least 400 grams, but less than 1.2 kilograms resulting in the agreed Base Offense Level.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: The parties agree that 2 levels should be added pursuant to Section 2D1.1(b)(2), because a firearm was possessed.

### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: None.

7

  c. **Other Adjustment(s)/Disputed Adjustments**: None.

  d. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 29.

  e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

  a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

8

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

9

**b.   Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**   Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.  These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

**d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention:**   The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g.  Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of any and all items listed in the Forfeiture Allegation in the Superseding Indictment dated November 5, 2020 (Doc. #85). Defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $1,000,000.00. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any

11

forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the government, at its option, may be released from its obligations under this agreement. The government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

1/25/2022
Date

SIRENA MILLER WISSLER #55374MO
Assistant United States Attorney

1/25/22
Date

JASON STANLEY JONES
Defendant

1/25/22
Date

JOHN P. ROGERS
Attorney for Defendant